Owen M. Rumelt, Esq.
Marc Rifkind, Esq.
Sarah G. Naji, Esq.
David M. Mohl, Esq.
SLEVIN & HART, P.C.
Attorneys for Plaintiffs
614 Hempstead Gardens Drive
West Hempstead, NY 11552
(516) 203-7570
        -and-
1625 Massachusetts Avenue N.W., Ste. 450
Washington D.C. 20036
(202) 797-8700
(202) 234-8231 (fax)
mrifkind@slevinhart.com
orumelt@slevinhart.com
snaji@slevinhart.com
dmohl@slevinhart.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BOARD OF TRUSTEES, SHEET METAL
WORKERS' NATIONAL PENSION FUND,

                Plaintiff,

      V.

ALLURE METAL WORKS, INC.,

                Defendant.
-------------------------------------------------------------------X

**COMPLAINT**

Civil No. 2:16-cv-1303

Plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund (the "Fund"), avers as follows:

## Introduction

1.    This claim is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.* ("MPPAA")(1982). The Fund seeks a judgment awarding withdrawal

liability, interest, liquidated damages, and attorneys' fees and costs incurred by an employer's alter-ego and/or successor as a result of the employer's withdrawal from the Fund, a multiemployer pension plan.

## Jurisdiction and Venue

2. This Court has jurisdiction over this action under Sections 502(e)(1), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). Venue lies in this Court under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as Defendant resides and operates in this district.

## Parties

3. Plaintiff is comprised of individual trustees who are "fiduciaries" with respect to the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are collectively the "plan sponsor" within the meaning of Section 4001(a)(10)(A) of ERISA, 29 U.S.C. § 1301(a)(10)(A).

4. The Fund is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Pursuant to Sections 502(a)(3), 4221(b)(1), and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1401(b)(1), and 1451(a)(1), Plaintiff is authorized to bring this action on behalf of the fund, its participants, and beneficiaries for the purpose of collecting withdrawal liability.

6. The Trustees administer the fund at 8403 Arlington Boulevard, Suite 300, Fairfax, VA 22031.

7. At all times pertinent to this action, Allure Metal Works, Inc. ("Allure") has been an employer within the meaning of 29 U.S.C. §152(2) and Section 3(5) of ERISA, 29 U.S.C. §

2

1002(5), and has been engaged in an industry affecting commerce, within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12).

8.  Allure is a New York corporation that maintained a principal place of business at 10 Fleetwood Court, Ronkonkoma, New York, 11779. Allure also currently leases a building located at 71 Hoffman Lane, Islandia, New York, 11722.

## Allegations in Support of Relief Sought

9.  The Fund incorporates the foregoing paragraphs as if fully stated herein.

10. Cool Sheetmetal, Inc. ("Cool Sheetmetal") is a New York corporation that has maintained a principal place of business at 10 Fleetwood Court, Ronkonkoma, New York, 11779.

11. All Around Spiral, Inc. ("All Around Spiral") was a New York corporation that maintained a principal place of business at 10 Fleetwood Court, Ronkonkoma, New York, 11779.

*Cool Sheetmetal Withdraws from the Fund*

12. Until November 30, 2011, Cool Sheetmetal employed employees represented for the purposes of collective bargaining by Sheet Metal Workers' International Association Local Union No. 28 ("Local Union No. 28"), a labor organization representing employees in an industry affecting interstate commerce.

13. At all times pertinent to this action, Cool Sheetmetal was signatory and bound by a collective bargaining agreement with Local Union No. 28 ("Agreement").

14. By this Agreement, Cool Sheetmetal was obligated to contribute to the Fund on behalf of its covered employees employed in any jurisdiction of the Sheet Metal Workers' International Association.

15. By this Agreement, Cool Sheetmetal was obligated to abide by the terms and conditions of the Agreement and Declaration of Trust establishing the Fund and any amendments thereto ("Trust Document"), and to submit monthly reports and payments to the Fund.

16. The Fund terminated Cool Sheetmetal's participation in the Fund on November 30, 2011 as a result of Cool Sheetmetal's habitual delinquent payment of contributions. Cool Sheetmetal's delinquencies to the Fund over time collectively totaled millions of dollars and resulted in multiple lawsuits by the Fund in the years prior to Cool Sheetmetal's termination from the Fund.

17. On or about November 30, 2011, the Fund determined that Cool Sheetmetal effected a "complete withdrawal" from the Fund as defined in Section 4203 of ERISA, 29 U.S.C. § 1383.

18. The Fund determined that as a result of this complete withdrawal, Cool Sheetmetal incurred withdrawal liability to the Fund in the amount of $13,002,519.26, as determined under Section 4201(b) of ERISA, 29 U.S.C. § 1381(b).

19. On or about December 13, 2011, Cool Sheetmetal received a Notice and Demand for payment of withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

20. This Notice and Demand for payment informed Cool Sheetmetal that its withdrawal liability was $13,002,519.26, payable in 43 quarterly payments of $414,843.09 and a final payment of $318,140.90. The Notice and Demand stated the first payment was due on or before January 11, 2012.

21. On or about May 17, 2012, Cool Sheetmetal received a letter from Fund's counsel informing Cool Sheetmetal that, due to the substantial likelihood that withdrawal liability

payments would not be made, the Fund had declared Cool Sheetmetal and all trades or businesses under common control to be in immediate default within the meaning of Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A).

22.  Neither Cool Sheetmetal nor any other trade or business has paid any of Cool Sheetmetal's withdrawal liability.

23.  Neither Cool Sheetmetal nor any other trade or business has requested plan-sponsor review of the withdrawal liability assessment against Cool Sheetmetal within the time period specified in Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A) and are now precluded from doing so.

24.  Neither Cool Sheetmetal nor any other trade or business has initiated arbitration of the withdrawal liability assessment against Cool Sheetmetal within the time period specified in Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1) and are now precluded from doing so.

*Cool Sheetmetal and Richard Kern File for Bankruptcy*

25.  On or about April 3, 2013, Richard Kern, the majority shareholder of Cool Sheetmetal, filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York ("Richard Kern Bankruptcy").

26.  The Fund filed suit against Cool Sheetmetal, All Around Spiral, and Thomas Rammelkamp, a co-owner of Cool Sheetmetal, for Cool Sheetmetal's withdrawal liability on August 7, 2013 in the United States District Court for the Eastern District of Virginia (referred to hereafter as the "All Around Spiral Litigation"). Richard Kern was not included as a defendant due to the Richard Kern Bankruptcy.

27. On September 9, 2013, Cool Sheetmetal filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York ("Cool Sheetmetal Bankruptcy").

28. On November 27, 2013, the Fund's claims against Cool Sheetmetal in the All Around Spiral litigation were stayed following Cool Sheetmetal's bankruptcy filing.

29. On September 17, 2013, the Richard Kern Bankruptcy was converted to a Chapter 7 bankruptcy.

30. On May 30, 2014, the Cool Sheetmetal Bankruptcy was converted to a Chapter 7 bankruptcy.

*All Around Spiral Was the Alter Ego of Cool Sheetmetal*

31. Richard Kern owned 68% of the shares of Cool Sheetmetal as of the date of Cool Sheetmetal's withdrawal from the Fund.

32. Richard Kern owned 100% of the shares of All Around Spiral as of the date of Cool Sheetmetal's withdrawal from the Fund.

33. After transferring operations from Cool Sheetmetal to All Around Spiral, All Around Spiral attempted to contribute to the Fund, however the Fund would not accept its contributions because All Around Spiral was an alter ego of Cool Sheetmetal, which the Fund had terminated due to its habitual delinquencies. The entirety of Cool Sheetmetal's withdrawal liability also remained due and owing.

34. On or about June 16, 2014, Sharon Kern purchased Richard Kern's shares of both Cool Sheetmetal and All Around Spiral through a sale of assets in the Richard Kern Bankruptcy.

35. Prior to selling his shares to his wife, Richard Kern was President of both Cool Sheetmetal and All Around Spiral and performed estimating duties for both companies.

36. Prior to purchasing her husband's shares of both companies, Sharon Kern assisted Richard Kern in performing estimating duties for both companies.

37. After purchasing her husband's shares, Sharon Kern became president of All Around Spiral on June 16, 2014.

38. Even though she served as the President of All Around Spiral, Sharon Kern relied on her husband's "expertise" for operational decisions, such as purchasing equipment.

39. In the All Around Spiral Litigation, All Around Spiral admitted that Richard Kern controlled both Cool Sheetmetal and All Around Spiral.

40. In her deposition for the All Around Spiral Litigation, Sharon Kern unfamiliar with All Around Spiral's own equipment, even though she is the President of the Company.

41. In his deposition for the All Around Spiral Litigation, Richard Kern testified that, after Sharon Kern purchased his shares of the company's shares, he continued to work at All Around Spiral, performing substantially the same duties under the nominal title of "consultant."

42. Following Cool Sheetmetal's withdrawal, it transferred employees to substantially similar roles at All Around Spiral. These employees included, but not are not limited to: Theresa R. Ellis, Donald B. Epstein, Jose R. Gomez, Jillian N. Guido, Ashley J. Kern, Richard Kern, Sharon R. Kern, Patrick Laskowski, Richard Odoom, Marco Rocaono, Robert Rudge, Romel Saquicela, Janice Vahdieck, Richard Wilczek, Brian Carros, Edgar Castillo, Kenneth J. Davidson, Douglas Kern, Joseph Minieri, and Erin Rice

43. All Around Spiral operated from the same facility occupied by Cool Sheetmetal at 10 Fleetwood Court, Ronkonkoma, New York, 11779.

44. Until its withdrawal from the Fund, Cool Sheetmetal manufactured, fabricated, and installed square and rectangle sheet metal products and performed both square and spiral duct sheet metal work.

45. All Around Spiral manufactured spiral and oval sheet metal products. All Around Spiral had the capacity to perform square and rectangular duct work and its website specifically describes its business as offering "a complete line of spiral and oval pipe fittings, as well as traditional square or rectangular duct"

46. There was a substantial overlap in customers and vendors between Cool Sheetmetal and All Around Spiral, including, but are not limited to: Clover Mechanical, Inc., Hennick Lane, Inc., Premier Mechanical, Inc., Brookline Mechanical, Inc., Epic Mechanical Contractors, Inc., Superior Mechanical, Inc., BP Mechanical, Inc., Peepels Mechanical, Inc.

47. Cool Sheetmetal and All Around Spiral used substantially identical equipment. All Around Spiral's vehicles were previously owned by Cool Sheetmetal or either simply left by Cool Sheetmetal's owners at the facility located at 10 Fleetwood Court, Ronkonkoma, New York, 11779. Vehicles included, but were not limited to, a 2003 Ford F450 Super Duty, a 2007 freight M2106 medium duty truck, and a 2009 freight M2106 medium duty truck.

48. All Around Spiral purchased the following equipment that was previously owned by Cool Sheetmetal: assorted metal carts, racks, and tables; 8-inch Wyosung press brake; assorted shears; quarter-inch edger; notcher; Roper Whitney shear; three air compressors; ear bender; assorted rolls; three pinspot welders; clutch press; bending brake; automatic shear; assorted lifts; assorted power tools; five thousand pound forklift; ten thousand pound forklift; five ton crane; Vicon plasma cutter; coil line; two slip and drive machines; Pittsburgh machine;

ventilation hood; drill press; assorted welders; assorted material; assorted office furniture and electronics; assorted shelving; spiral machine; ovalizer machine; and ring making machine.

49. In his deposition for the All Around Spiral Litigation, Richard Kern stated that he believed the Fund and Local Union No. 28 are responsible for Cool Sheetmetal's bankruptcy and All Around Spiral's inability to participate as a contributing employer in the Fund.

50. On September 28, 2015, a consent judgment was entered in the All Around Spiral Litigation in favor of the Fund and against All Around Spiral in the amount of $13,002,519.26, an amount equal to Cool Sheetmetal's withdrawal liability.

### *Allure Begins Operations*

51. Allure was incorporated in New York on or about April 18, 2013. Allure was inactive until the All Around Spiral Litigation commenced.

52. Allure began operating during the course of the All Around Spiral Litigation to circumvent both Cool Sheetmetal's and All Around Spiral's respective labor obligations and to evade and avoid the Fund's attempts to collect Cool Sheetmetal's withdrawal liability.

53. Richard and Sharon Kern founded Allure in direct response to the All Around Spiral Litigation, as an attempt to avoid satisfying Cool Sheetmetal's pension liabilities while continuing Cool Sheetmetal's business operations.

54. In her deposition for the All Around Spiral Litigation, Sharon Kern testified that the entirety of Allure's stock is held in a Kern family trust. Douglas and Ashley Kern, the children of Richard and Sharon Kern, are the beneficiaries of this trust.

55. In his deposition for the All Around Spiral Litigation, Richard Kern admitted that he currently acts as a "consultant" at Allure, where he performs substantially the same role as he

did at Cool Sheetmetal and All Around Spiral, performing estimating and helping to negotiate sales.

56. Richard Kern controls the operations of Allure.

57. Sharon Kern has been listed as President of Allure since its operations began. In her deposition for the All Around Spiral Litigation, Sharon Kern testified that, as President of Allure, she acts as a manager and assists Richard Kern in his estimating duties, as she did while at Cool Sheetmetal and All Around Spiral.

58. In his deposition for the All Around Spiral Litigation, Richard Kern stated he is responsible for acquiring new business at Allure.

59. In her deposition for the All Around Spiral Litigation, Sharon Kern testified that, as President of Allure, she relies on Richard Kern's experience and expertise.

60. As a result of the All Around Spiral litigation, All Around Spiral transferred its non-union employees to similar roles at Allure.. These employees included, but are not limited to, Marlon Alvarado, Oneil Bowen, Frankie Cafaro, Peter Campbell, Daniel Garcia, Jose Gomez, David Gonzalez, Ambrosio Hernandez, Jorge Laredo, Joseph Robinson, Leonard Russell, Mitch Seitenberg, and Milton Tacuri.

61. Allure performs substantially the same work that Cool Sheetmetal and All Around Spiral performed. Allure manufactures, fabricates, and installs square, rectangular, spiral, and oval sheet metal products.

62. Allure operated from the same facility occupied by Cool Sheetmetal and All Around Spiral at 10 Fleetwood Court, Ronkonkoma, New York, 11779.

63. Allure currently leases a new building for expanded operations located at 71 Hoffman Lane, Islandia, New York.

64. On or about December 1, 2014, during the All Around Spiral Litigation, Sharon Kern, in her capacity as President of Allure, "purchased" sheet metal equipment from herself as President of All Around Spiral. For a total sum of $38,000, Allure acquired the following equipment from All Around Spiral: a Betech Ovalizer; Ovalizer Dies; a Betech Ring Maker; and a Vicon Plasma Cutting System.

65. Cool Sheetmetal transferred assets to All Around Spiral, which transferred the same assets to Allure shortly thereafter. For all three companies, the same machines produced the same products in the same facility.

66. Richard Kern and Sharon Kern created Allure due to their anti-union animus stemming from Cool Sheetmetal's substantial vested, unpaid employee benefit contributions and withdrawal liability.

### Count I: Claim against Defendant Allure for Alter Ego Liability

67. The Fund incorporates the foregoing paragraphs as if fully stated herein.

68. At all relevant times, Allure was the alter ego and mere continuation of Cool Sheetmetal.

69. At all relevant times, All Around Spiral was the alter ego and mere continuation of Cool Sheetmetal, and Allure was the alter ego and mere continuation of All Around Spiral.

70. Allure and All Around Spiral were established for the purpose of protecting Cool Sheetmetal's business assets from its labor obligations, including withdrawal liability under ERISA.

71. Cool Sheetmetal and Allure had substantially identical management, business purposes, operations, equipment, customers, supervision, and ownership. The companies both performed the same work.

72. Cool Sheetmetal and All Around Spiral had substantially identical management, business purposes, operations, equipment, customers, supervision, and ownership. All Around Spiral and Allure had substantially identical management, business purposes, operations, equipment, customers, supervision, and ownership. The companies all performed the same work.

73. By continuing Cool Sheetmetal's operations as Allure, Cool Sheetmetal sought to evade and avoid its labor obligations, including withdrawal liability.

74. By continuing Cool Sheetmetal's operations as All Around Spiral and, subsequently, Allure, Richard and Sharon Kern sought to avoid Cool Sheetmetal's labor obligations, including withdrawal liability.

75. Richard and Sharon Kern founded Allure in direct response to the All Around Spiral Litigation, in an attempt to avoid satisfying Cool Sheetmetal's pension liabilities while continuing Cool Sheetmetal's business operations.

76. As an alter ego of Cool Sheetmetal, Allure is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

77. Under federal labor law, Allure is jointly severally liable with Cool Sheetmetal for all amounts owed to the Fund.

78. Accordingly, Allure has violated Section 515 of ERISA, 29 U.S.C. § 1145, and is liable under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for delinquent withdrawal liability in the amount of $13,002,519.26; interest on the withdrawal liability at the Fund's interest rate of 0.0233% per day, compounded daily; an amount equal to the greater of interest or liquidated damages calculated as twenty percent of the withdrawal liability; and the Fund's attorneys' fees and costs in collecting the delinquent amounts, including the costs of this action.

**Count II: Claim against Defendant Allure for Successor Liability**

79. The Fund incorporates the foregoing paragraphs as if fully stated herein.

80. As a named defendant and president of Cool Sheetmetal, Richard Kern had actual and constructive notice before transfer of assets and operations to All Around Spiral of the Fund's withdrawal liability assessment, demand, and subsequent lawsuit at issue in the All Around Spiral Litigation.

81. As a manager at both Cool Sheetmetal and All Around Spiral, Sharon Kern had actual and constructive notice of the withdrawal liability and the All Around Spiral Litigation.

82. Sharon Kern also had actual and constructive notice of the withdrawal liability and the All Around Spiral Litigation upon purchasing the shares of Cool Sheetmetal and All Around Spiral.

83. Richard and Sharon Kern founded and/or transferred operations to Allure in direct response to the All Around Spiral Litigation, in an attempt to avoid satisfying Cool Sheetmetal's pension liabilities while continuing Cool Sheetmetal's business operations.

84. Allure filed for incorporation in New York on or about April 18, 2013, after the Fund's assessment and notice of withdrawal liability to Cool Sheetmetal.

85. Cool Sheetmetal filed for bankruptcy while All Around Spiral continued its operations, and only months after Allure was founded.

86. As Cool Sheetmetal's successor, Allure is liable for Cool Sheetmetal's withdrawal liability obligations to the Fund because there has been substantial continuity of operations between Cool Sheetmetal and Allure, and Allure had prior notice of Cool Sheetmetal's withdrawal liability.

87. At all times pertinent to this action, Allure and Cool Sheetmetal had substantially identical management, business purposes, operations, equipment, customers, supervision.

88. At all times pertinent to this action, Allure and Cool Sheetmetal produced the same products and performed the same work.

89. Under applicable federal labor law, Allure is jointly liable with Cool Sheetmetal for all amounts owed to the Fund.

**WHEREFORE**, the Fund requests a judgment against Defendant, jointly and severally, for all amounts due to the Fund at the time this cause reaches judgment and other relief, to wit:

(a) A judgment against Defendant, jointly and severally, on behalf of the Fund, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

   (i). $13,002,519.26 in withdrawal liability;

   (ii). Interest on the delinquent withdrawal liability at the Fund's rate of 0.233%, compounded daily from the date due through the date paid or the date of judgment, in the minimum amount of $4,757,125.65;

   (iii). An amount equal to the greater of the interest on the withdrawal liability at the above rate or liquidated damages equal to twenty percent of the withdrawal liability in an amount of at least $4,757,125.65; and

   (iv). The attorneys' fees and costs incurred by the Fund in the collection of the delinquent withdrawal liability, including the attorneys' fees and costs of this action; and

(b) Such further or different relief as this Court may deem proper and just.

Dated: West Hempstead, NY
March 16, 2016

Respectfully submitted,

  /s/ Owen M. Rumelt
Owen M. Rumelt, Esq.
Marc Rifkind, Esq.*
Sarah G. Naji, Esq.*
David M. Mohl, Esq.*
SLEVIN & HART, P.C.
614 Hempstead Gardens Drive
West Hempstead, NY 11552
(516) 203-7570

-and-

1625 Massachusetts Avenue N.W., Ste. 450
Washington D.C. 20036
(202) 797-8700
(202) 234-8231 (fax)
orumelt@slveinhart.com
snaji@slevinhart.com
dmohl@slevinhart.com

Counsel for Plaintiffs

*Pro hac vice application forthcoming

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by Section 502(h) of ERISA, 29 U.S.C. § 1132(h).

20378715v1